UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

                                Case No. 2:13-cr-02

v.                                 HON. R. ALLAN EDGAR

ROBERT KELLY EVERSON,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Defendant Robert Kelly Everson is charged as a felon in possession of a firearm. Defendant moves to suppress statements that he made to ATF Special Agent Petschke and to suppress the discovery of two handguns in his apartment due to the coercive actions of Agent Petschke. Defendant claims that Agent Petschke stated that if defendant told the officers where the gun or guns were located, he would not be charged with a crime because the officers were only interested in getting the guns off the street. Agent Petschke denies making any promises to defendant, states that he read defendant his Miranda rights, and indicates that the guns would have been found, even without defendant's statements, when the officers executed the search warrant. Plaintiff states he does not recall being read Miranda rights.

A hearing was held on July 1, 2013. Michigan State Trooper Rota and ATF Special Agent Petschke gave testimony at the hearing. The government also introduced an audio recording made by Trooper Rota. Agent Petschke secured a search warrant for defendant's residence based upon a tip from a confidential informant (CI) who informed Agent Petschke that defendant, a

convicted felon, had a gun at his residence. Defendant was observed driving his vehicle and Trooper Rota pulled defendant's vehicle over. Trooper Rota had previously conducted a LEIN search on defendant and learned that he had a suspended license. Trooper Rota informed defendant that he was under arrest for having a suspended license and that a search was being conducted at his home. Trooper Rota did not give defendant a Miranda warning. Defendant was placed in the patrol car and driven back to his home. While Trooper Rota was speaking with defendant, defendant indicated that he had a gun in his residence. Defendant provided keys to his residence. Agent Petschke then introduced himself to defendant and asked defendant if he had any firearms in the residence. Defendant replied in the affirmative. Agent Petschke then gave defendant Miranda rights for the first time. Defendant again stated that he had a gun in his house. The search for the gun at the residence continued. Agent Petschke returned to defendant and asked where the gun was located. Defendant informed Agent Petschke that the gun was in the kitchen cabinet. The officers had not yet begun to search the kitchen at that point. Subsequently, Trooper Rota learned that an error had been made regarding the status of defendant's driver's license and that defendant's license was not suspended and defendant should not be under arrest. At some point, Trooper Rota informed defendant of the mistake and that defendant was not under arrest.

Agent Petschke finished conducting the search after finding the gun in the kitchen. Agent Petschke left the residence and locked the door. Agent Petschke then approached defendant and asked if defendant would make a written statement. Defendant informed Agent Petschke that Trooper Rota was not arresting him and asked if Agent Petschke was planning to arrest him. Agent Petschke replied that he was not going to arrest defendant. Defendant agreed to make a written statement, but wanted to do it inside his residence. The door to the residence was locked. Defendant entered the residence through a window and then opened the door for the officers from inside his

residence. Defendant then voluntarily informed the officers that he had a pen gun that he wished to provide to the officers. The pen gun was located inside a dresser drawer in his bedroom. That room had been searched, but the pen gun was not found. Defendant and Agent Petschke sat down and completed a written statement that defendant signed.

In defendant's post hearing supplemental brief, he argues that the search warrant was defective because it was based upon a CI's hearsay statement that could not be tested for reliability and was insufficient to support a probable cause finding. Further, defendant argues that his Miranda rights were violated because his initial statements were made while in custody without a Miranda warning and his post-Miranda statements were responses to the same questions asked pre-Miranda.

The search of defendant's residence was based upon a search warrant obtained by Agent Petschke telephonically from Magistrate Judge Ellen S. Carmody. The application contained the statement that "ATF Confidential Informant #774040-043" had "observed Everson in possession of a loaded Smith & Wesson .38 caliber revolver." Defendant Everson had a prior felony conviction. The application also contained information regarding defendant, where defendant lived, regarding defendant's dog, and defendant's previous relationships. Agent Petschke included a statement that the information provided by the CI had proven reliable in the past in "subsequent controlled and undercover purchases of firearms, narcotics, and other related evidence."

A judicial officer determines probable cause based upon the totality of the circumstances. *United States v. Hill*, 142 F.3d 305 (6th Cir. 1998), citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "Probable cause requires only a probability or substantial chance of criminal activity." *Id.* The Sixth Circuit in *United States v. Woosley*, 361 F.3d 924, 926-27 (6th Cir. 2004), set forth the standard used in evaluating whether probable cause existed to support the authorization of a search warrant:

This court reviews the sufficiency of an affidavit to determine "whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir.1991) (quotation omitted). The affidavit should be reviewed in a commonsense - rather than a hypertechnical - manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny. *United States v. Greene*, 250 F.3d 471, 479 (6th Cir.2001). The magistrate's determination of probable cause is afforded great deference, and that determination should be reversed only if the magistrate arbitrarily exercised his discretion. *Id.*

In *United States v. Allen*, 211 F.3d 970 (2000) (*en banc*), which is relied on by both Woosley and the Government, we held that where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate may believe that evidence of a crime will be found. *Id.* at 976 (emphasis omitted). In concluding that independent police corroboration of the information provided was unnecessary in such cases, we emphasized that probable cause determinations must be based on the totality of the circumstances and cautioned against a continuing reliance on formalistic "tests" that required the satisfaction of particular elements to support a finding of probable cause. *Id.* at 975-76. Consequently, an affidavit including a tip from an informant that has been proven to be reliable may support a finding of probable cause in the absence of any corroboration. *See Id.* at 976; *United States v. Smith*, 182 F.3d 473, 478-79 (6th Cir.1999). Alternatively, an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information. *See Illinois v. Gates*, 462 U.S. 213, 241-45, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir.2000) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information.").

A probable cause review of an affidavit supporting a search warrant is limited to the information presented in the four corners of the affidavit. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

In the opinion of the undersigned, based upon the four corners of the search warrant application, there was sufficient information provided for a finding of probable cause to issue the search warrant. The CI provided information about seeing defendant with the firearm inside defendant's residence. The CI had been reliable in the past when working with both state and federal agents. That information, combined with the information provided by Agent Petschke, was sufficient to find probable cause to support a search warrant.

Defendant relies on the recent Sixth Circuit unpublished decision in *United States v. Buffer*, 2013 WL 3185585 (6th Cir., June 24, 2013), where the court concluded that a bare bones affidavit based on information from an unnamed informant without specific independent corroborating evidence failed to support a probable cause finding for a search warrant. However, the facts in *Buffer* differ here because Agent Petschke explained and corroborated the CI's reliability. Unlike the CI in *Buffer*, the CI here was not simply an unknown informant. The CI observed the defendant with the gun in the defendant's residence so that a nexus existed for the search of the residence. The affidavit and search warrant application provided by Agent Petschke was not a "bare bones affidavit."

When a defendant claims that his confession was coerced, the government bears the burden of proving by preponderance of the evidence that defendant's waiver was voluntary. *See Lego v. Twomey*, 404 U.S. 477, 489 (1972); *North Carolina v. Butler*, 441 U.S. 369 (1979). In determining whether or not the waiver was voluntary, the Court is required to look at the totality of the circumstances to determine whether or not the police officers engaged in coercive conduct during the interrogation and whether or not the coercive conduct resulted in the incriminating statements. *See Colorado v. Connelly*, 479 U.S. 157 (1986). Factors which should be considered are the location of the questioning, whether *Miranda* warnings were given, the number of interrogators, the length

of questioning, whether or not the defendant was denied food, water or toilet facilities, and whether the police used threats, promises, lies or tricks. *Id*.

In *Connelly*, the court rejected the argument that a defendant's mental state without police coercion was enough to suppress a confession as involuntary. In that case, the defendant suffered from chronic schizophrenia. The voice of God told defendant to confess to the murder. Defendant contacted police and confessed to the murder. The Supreme Court rejected the contention that defendant's mental state alone rendered the confession involuntary. "But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.'" *Id*. at 164.

In *Daoud v. Davis*, 618 F.3d 525 (6th Cir. 2010), the court explained:

> Daoud contends that he did not knowingly and intelligently waive his Miranda rights when he confessed to his mother's murder and that admitting those statements at trial violated his Fifth Amendment rights. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court established "certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation." *Duckworth v. Eagan*, 492 U.S. 195, 201, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). However, a suspect may waive his Miranda rights "provided the waiver is made voluntarily, knowingly, and intelligently." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602. This inquiry "has two distinct dimensions." *Colorado v. Spring*, 479 U.S. 564, 573, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986)).
>
>> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of

> > comprehension may a court properly conclude that the Miranda rights have been waived.
>
> *Moran*, 475 U.S. at 421, 106 S.Ct. 1135 (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979)).
>
> To be deemed knowing and intelligent, "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring*, 479 U.S. at 574, 107 S.Ct. 851. Instead, "we examine 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused,'" *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir.2009) (alterations in original) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)), to determine "whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time,'" *id*. (alterations in original) (quoting *Spring*, 479 U.S. at 574, 107 S.Ct. 851).

*Id.* at 528-530. *See also Garner v. Mitchell*, 557 F.3d 257 (6th Cir. 2009).

In *United States v. Siler*, No. 11-5975 (6th Cir., May13, 2013), an unpublished opinion, the Sixth Circuit found that the statements made by defendant were not voluntary. The officer read defendant Miranda rights and defendant waived those rights. The officer misrepresented the evidence and told defendant they had a pretty good case against defendant for two burglaries. Further, the officer made the promise that if defendant helped locate a handgun, he would use his clout with the district attorney to assure that defendant would receive drug rehabilitation instead of jail time. The officer further told defendant that he would speak to the probation officer and inform him that defendant was a good candidate for probation. The officer stated that defendant would not be charged with a crime if he cooperated.

In a second interview, the officer told defendant that he could not make any promises, but he would speak to the district attorney. Defendant waived his Miranda rights, but indicated that he did not want to incriminate himself. The officer stated that he would speak with the district

attorney and the attorney always worked with him and would this time. Defendant then confessed to the crime and indicated that he sold the gun to his nephew. The officer then told defendant he would speak with the district attorney and that the case would not go to federal court. Defendant was then charged in federal court and pleaded under an agreement that allowed him to challenge his statements. Defendant was sentenced to sixteen years imprisonment and five years supervised release. The Sixth Circuit found that the officer's offers of leniency were coercive and were the motivating factors in defendant's confession. The Sixth Circuit found that the government failed to show that defendant's confession was voluntary.

The Sixth Circuit has established three factors to determine whether a confession was involuntary: the police activity was objectively coercive, the coercion in question was sufficient to overbear the defendant's will, and the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement. *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999). Contrary to defendant's initial argument in his motion, there exists no evidence that any statement made by defendant to the officers was the product of coercive activity, based upon promises made by Agent Petschke. There is no evidence that Agent Petschke, or anyone else, made any promises to defendant. Defendant, in fact, signed his statement which stated that no threats or promises were made in return for the statement and that the statement was made voluntarily.

Pursuant to the landmark decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), an individual who is in custody and subject to interrogation is entitled to be informed of his Miranda rights, which includes the right to counsel. Defendant must be informed of his Miranda rights if he is in custody and subject to interrogation. To determine whether or not the defendant is in custody, the Court is required to look at the totality of the circumstances to determine whether or not the defendant's freedom of action has been restrained in a significant way. *See Oregon v. Mathiason*,

429 U.S. 492 (1977). Factors which can be considered include the length of the detention, the physical surroundings, whether the suspect believed his freedom was significantly restricted, the amounts and kinds of pressure placed upon the defendant by police officers, the location of the questioning, and the physical surroundings. *See United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009).

After defendant was pulled over by Trooper Rota, he was handcuffed, placed in a police vehicle, and driven back to his residence. It is undisputed that at this time defendant was in custody and that Miranda warnings were required prior to questioning. When Trooper Rota asked defendant if he had guns in his residence, defendant responded in the affirmative by stating that he had an old pistol. When Agent Petschke first had contact with defendant, he asked whether defendant had firearms in the residence. Defendant stated that he did. At this point, Agent Petschke gave defendant Miranda warnings for the first time. Less than two minutes after receiving Miranda warnings and in response to questioning, defendant indicated that he had a gun in the house. After the pistol was found, defendant then voluntarily informed the officers that he had a pen gun. Defendant then signed a written statement admitting that he had two guns in his possession.

The answers defendant provided to questions posed by Trooper Rota and Agent Petschke, after defendant was arrested and prior to defendant receiving a Miranda warning, should be suppressed. Whether defendant's subsequent statements, after Miranda rights were provided, are admissible in this case is at issue. Agent Petschke knew that Trooper Rota had asked defendant about guns in his residence and that defendant had indicated that he had one. Agent Petschke asked defendant if he had a gun in his residence and, after getting an affirmative response, gave defendant a Miranda warning and then asked defendant again if he had a gun in his residence. Defendant again replied affirmatively. The Supreme Court has held that the "midstream recitation of [Miranda]

warnings after interrogation and unwarned confession could not effectively comply with *Miranda's* constitutional requirement" requiring suppression of the statements. *Missouri v. Seibert*, 542 U.S. 600, 604 (2004). In the opinion of the undersigned, defendant's statements regarding the handgun found in the kitchen should be suppressed. Both Trooper Rota and Agent Petschke asked defendant whether he had any guns in his residence, after defendant was arrested and before he was given Miranda warnings. Once defendant admitted that he did have a gun in his residence, Agent Petschke gave defendant Miranda warnings and then again asked defendant if he had a gun. It is clear that this subsequent Miranda warning was ineffectual and a procedurally improper technique that requires suppression of statements regarding the handgun found in the kitchen. This, however, does not end the inquiry.

The government asserts that the gun would have been located without the statements made by defendant. The facts presented at the hearing establish that the gun in the kitchen would have been located. At the time defendant provided the location of the gun, the officers searching the residence had not yet searched the kitchen. The handgun and the ammunition were not particularly well hidden in the kitchen cabinets. The Sixth Circuit has held that when a search was inevitable and the evidence would have been found despite further unMirandized questioning, the evidence is admissible. *United States v. Woods*, 711 F.3d 737, 744 (6th Cir. 2013), citing *United States v. Alexander*, 540 F.3d 494, 504 (6th Cir. 2008). In the opinion of the undersigned, the officers would have discovered the gun during the execution of the search warrant without any statement from defendant. Accordingly, in the opinion of the undersigned, the discovery of the handgun in defendant's residence should not be suppressed.

Further, although the officers would not have found the pen gun without defendant's statement, defendant clearly volunteered that he had a pen gun after he was no longer under arrest

and after the search was completed. After Agent Petschke ended the search and locked the residence, defendant let the officers back into his residence to make a written statement. When the officers re-entered the residence, defendant indicated that he wanted to show them something and promptly took them into his bedroom and showed them the location of the pen gun in a dresser drawer that had already been searched by one of the other officers involved in the search. In the opinion of the undersigned, the statements that defendant made regarding the pen gun should not be suppressed because they were made voluntarily and were not solicited by the officers. In fact, the statements were made after the search of defendant's residence was over and the pen gun was not found.[1]

Accordingly, it is recommended that defendant's Motion to Suppress Evidence (Docket #14) be granted in part and denied in part. It is recommended that all statements defendant made prior to being advised of his Miranda rights be suppressed. It is further recommended that all statements made by defendant concerning the handgun found in the kitchen be suppressed. As to all other issues, it is recommended that the motion be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR

---

[1] At the hearing defense counsel suggested that since the pen gun was not found during the search, the handgun may not have been found without defendant's statements. The officers were looking for a handgun and not a pen gun, based upon the statements made by CI and the information in the search warrant. The pen gun was much easier to conceal. Agent Petschke testified that as soon as he saw the pen gun he knew exactly what it was, but further added that not every police officer would know that the pen gun was in fact a gun. A photograph was admitted of the pen gun (Government exhibit 14). The pen gun looks like a pen or a small flashlight. It is something that was clearly designed to be concealed as a gun while in plain view.

72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   September 19, 2013