UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT KELLY EVERSON,

    Defendant.
    _____/

File No. 2:13-CR-02

HON. ROBERT HOLMES BELL

**O P I N I O N**

    Defendant Robert Kelly Everson is charged with being a felon in possession of a firearm. (Dkt. No. 1, Indictment.) On October 7, 2013, Magistrate Judge Timothy P. Greeley issued a Report and Recommendation ("R&R") granting in part and denying in part Defendant's motion to suppress (Dkt. No. 14). (Dkt. No. 31, R&R.) The Magistrate Judge recommended that "all statements Defendant made prior to being advised of his Miranda rights" and "all statements made by defendant concerning the handgun found in the kitchen" be suppressed, and that, as to all other issues, the motion be denied. (R&R 11.) This matter is before the Court on objections to the R&R filed by Defendant (Dkt. No. 37) and by the government (Dkt. No. 36). For the reasons that follow, Defendant's motion will be denied and the government's motion will be remanded for further findings by the Magistrate Judge.

1

I.

This Court is required to make a *de novo* determination of those portions of the R&R to which specific objection has been made, and may accept, reject, or modify any or all of the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). "[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).

II.

Defendant has raised three objections to the R&R. He objects to the findings that: (1) the search warrant was valid; (2) the hand gun would have been inevitably discovered; and (3) he voluntarily disclosed the existence and location of the pen gun.

**A. Search Warrant**

Defendant contends that the search warrant lacked probable cause because it was based on a hearsay statement from an unnamed informant, and was not sufficiently corroborated.

In reviewing the sufficiency of an affidavit, the Court's task is to determine "whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th

Cir.1991)). "The affidavit should be reviewed in a commonsense – rather than a hypertechnical – manner, and the court should consider whether the totality of the circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny" *Id.* "The magistrate's determination of probable cause is afforded great deference, and that determination should be reversed only if the magistrate arbitrarily exercised his discretion." *Id.* "[A]n affidavit including a tip from an informant that has been proven to be reliable may support a finding of probable cause in the absence of any corroboration." *Id.* at 926-27. In such cases the affidavit must, however, inform the magistrate of some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable. *United States v. May*, 399 F.3d 817, 824 (6th Cir. 2005) (quoting *Aguilar v. Texas*, 378 U.S. 108, 114 (1964)).

The search warrant affidavit contained information from a confidential informant that Defendant was in possession of a loaded Smith & Wesson .38 caliber revolver. (R&R 3.) Defendant contends that the warrant affidavit cannot be distinguished from the affidavit that was held insufficient to support a probable cause finding in *United States v. Buffer*, No. 12-5052, 2013 WL 3185585 (6th Cir. June 24, 2013). Defendant's assertion lacks merit. *Buffer* involved an anonymous tip that was insufficiently corroborated. *Id.* at *3. As Defendant acknowledges, the warrant affidavit in this case stated that the tip came not from an anonymous source, but from a confidential informant who had been used in the past, had proven to be credible, reliable, and truthful, and whose prior information had "resulted in the

3

creation of numerous Federal and State criminal cases and subsequent controlled and undercover purchases of firearms, narcotics, and other related evidence." (Dkt. No. 37, Def.'s Obj. 3.) The fact that the issuing magistrate judge was not told the name of the informant is not of particular concern. As noted in *United States v. Harris*, 403 U.S. 573, 584-85 (1971), it is not "especially significant" that neither the name nor the person of the informant was produced before the magistrate where the police themselves knew his name. *Id*. at 584-85. The statements of an informant whose identity is known to the police and who would be subject to prosecution for making a false report, is entitled to "far greater weight" than those of an anonymous source. *United States v. May*, 399 F.3d 817, 824-25 (6th Cir. 2005). Because the officer indicated that the informant had been used on numerous occasions, a commonsense, nontechnical reading of the warrant application clearly suggests that the identity of the informant was known to the officer.

Defendant contends that the informant's reliability was not sufficiently corroborated because the affidavit gave no specific examples evidencing the informant's credibility or truthfulness, nor any representations that the informant's information had resulted in an arrest or a criminal conviction. (Def.'s Obj. 3.)

There is no requirement that the confidential source's information contain specific examples of the informant's credibility, or that his prior information have led to an arrest or conviction. Sixth Circuit precedent "'clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as

4

reliable.'" *United States v. Brown*, No. 12–1591, — F.3d —, 2013 WL 5495674, at *3 (6th Cir. June 27, 2013) (quoting *United States v. Greene*, 250 F.3d 471, 480 (6th Cir. 2001)). In *May*, the court upheld a warrant where the confidential source had furnished information for a period of six months, had worked with the officer in the investigation of this matter, and had "provided assistance in unrelated drug investigation cases." 399 F.3d at 824.

The officer's statement in this case that the confidential informant had provided assistance that had resulted in numerous criminal cases and subsequent controlled and undercover purchases of firearms, narcotics, and other evidence, provides sufficient information of the confidential informant's track record for reliability. Moreover, the officer indicated that the confidential informant had previously shown reliability in matters involving firearms, the same subject matter on which he provided information in this case. The Court concludes that the warrant application provided a sufficient basis on which the magistrate judge could find probable cause.

**B. Failure to Suppress the Guns**

Defendant also objects to the R&R's failure to recommend suppression of the handgun and the pen gun. Defendant contends that because of the continuing existence of a coercive and controlling atmosphere, the two guns seized by the authorities should be suppressed.

1. <u>Handgun</u>

Defendant told the officers where the handgun was located before it was discovered

in the kitchen. The Magistrate Judge recommends that all of Defendant's statements regarding the guns be suppressed, but that the handgun itself not be suppressed. (R&R 10.)

Defendant objects to the Magistrate Judge's conclusion that even if Defendant had not told Special Agent Petschke where the handgun was located, the handgun would have inevitably been found during the search of the kitchen.

"'[T]he inevitable discovery exception to the exclusionary rule applies when the government can demonstrate either the existence of an independent, untainted investigation that inevitably would have uncovered the same evidence or other compelling facts establishing that the disputed evidence inevitably would have been discovered.'" *United States v. Alexander*, 540 F.3d 494, 502 (6th Cir. 2008). The Magistrate Judge's inevitable discovery conclusion is based on his factual finding that, at the time Defendant provided the location of the gun, the officers searching the residence had not yet searched the kitchen, and on his finding that the handgun and ammunition were not particularly well hidden in the kitchen cabinets. (R&R 10.)

Defendant has not challenged these factual findings. Defendant merely asserts that because the officers did not find the pen gun during their search of the bedroom, it is equally likely that the officers would not have found the handgun during their search of the kitchen. The Magistrate Judge was not persuaded by this argument. He noted that the officers were looking for a handgun rather than a pen gun based on the information in the search warrant. (R&R 11, n.1.) The Magistrate Judge also noted that the pen gun looks like a pen or a small

6

flashlight, that it is much easier to conceal, and that not every police officer would recognize it as a gun. (*Id.*) Defendant has not challenged these factual findings. The Court finds that the Magistrate Judge's factual findings are supported by the record and are not controverted. The Court accordingly accepts these factual findings, and, on *de novo* review, agrees with the Magistrate Judge's conclusion that the handgun would inevitably have been discovered during the search of the kitchen.

2. Pen Gun

The Magistrate Judge recommends that the pen gun not be suppressed because Defendant's statements regarding the existence and location of the pen gun were made voluntarily and were not solicited by the officers. (R&R 11.)

Defendant objects to the Magistrate Judge's finding of voluntariness. Defendant contends that the information about the pen gun was not voluntary because it was only provided after Defendant had been held by the Michigan State Police for well over an hour.

The Magistrate Judge noted that Defendant informed the officers of the location of the pen gun after he was no longer under arrest and after the search was completed. (R&R 10-11.) Defendant unlocked his house to let the officers back in, indicated that he wanted to show them something, and then took them into his bedroom and showed them the location of the pen gun in a dresser drawer that had already been searched. (*Id.* at 11.) Although Defendant disclosed the existence and location of the pen gun only after he had been in custody and under the supervision of the officers for over an hour, the Court observes no

7

connection between the previous interrogation and restraint on his movement and his disclosure of the pen gun. There is no evidence that the officers asked Defendant about additional firearms and or suggested the possibility of a further search of his house. The Court is satisfied that the evidence leads to the conclusion that Defendant disclosed the existence and location of the pen gun voluntarily.

**III.**

The R&R recommends that all statements made by defendant concerning the handgun found in the kitchen be suppressed. The government objects to the implicit conclusion that Defendant's written statements regarding his possession of the handgun are inadmissible.

The Magistrate Judge determined that Defendant's statements regarding the handgun found in the kitchen should be suppressed because he was not given *Miranda* warnings until after he admitted he had a gun in his residence. (R&R 9-10.) The Magistrate Judge determined that giving *Miranda* warnings after interrogation and an unwarned confession was ineffectual, and that the statements made after a midstream recitation of *Miranda* warnings should be suppressed pursuant to *Missouri v. Seibert*, 542 U.S. 600 (2004). (R&R 10.) The government does not object to this finding as it pertains to the oral statement regarding the gun. The government argues, however, that Defendant's written statement should not be suppressed because Defendant was no longer in custody when he made the written statement, and because he made the written statement voluntarily after he was told he was not under arrest for the suspended license charge, after he was told he would not be

8

arrested on any federal charges, after the search was concluded, and after he unlocked his home so the agents could enter for purposes of taking his statement. (Dkt. No. 30, Gov. Supp. Resp. 6-7.) The government contends that the circumstances in this case are similar to those in *Oregon v. Elstad*, 470 U.S. 298 (1985), distinguished in *Seibert*, where a second confession was deemed admissible despite an initial unwarned statement because the first statement was given without any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will. (Dkt. No. 36, Gov. Obj. 4-5.) The government contends that the fact that Defendant turned over the pen gun without prompting shows that at the time he wrote the written confession he was not being coerced, but was voluntarily assisting police. (*Id.* at 5.)

The R&R's discussion regarding *Seibert* references Defendant's statements in response to questioning by Agent Petschke, but does not specifically address Defendant's written statement. (R&R 9-10.) The R&R does not address the government's argument that the written statement did not violate *Miranda* protections because Defendant was no longer in custody and because he made the written statement voluntarily. Whether Defendant's written statement is subject to suppression under *Seibert*, or as "fruit of the poisonous tree," depends on preliminary factual determinations concerning whether he was still in custody when he made the written statement, and whether there were intervening events that would break the causal connection between the unwarned questioning and the post-warning statement. *See Seibert*, 542 U.S. at 619 (Breyer, concurring). Because the Magistrate Judge

9

heard the audio recording and the testimony of Michigan State Trooper Rota and ATF Special Agent Petschke at the suppression hearing, the Court believes it is appropriate to remand the issue of the written statement to the Magistrate Judge for findings of fact and a specific recommendation on whether it should be suppressed.

For the reasons stated herein, Defendant's objections to the Magistrate Judge's R&R are overruled, and the government's objections are remanded to the Magistrate Judge for further findings and consideration on the issue of the suppression of the written statement. The R&R is approved and adopted as to all issues except the suppression of the written statement.

An order consistent with this opinion will be entered.


Dated: October 21, 2013                    /s/ Robert Holmes Bell
                                           ROBERT HOLMES BELL
                                           UNITED STATES DISTRICT JUDGE